Parker C. J.
It seems not to be necessary, in an indictment for not repairing a highway, to set out the termini a quo and ad quern of the way, though it is certainly better to be thus particular, and is more consistent with the general course of criminal proceedings, which require certainty whenever it is attainable ; that it is not necessary, however, is laid down in 3 Chitty’s Cr. L. 570 ; Rouse v. Bardin, 1 H. Bl. 351. [See also Alban v. Brounsall, Yelv. (Metcalf’s ed.) note 1.] There is therefore no sufficient objection to the indictment.[1]
But we think it has not been proved by the government, that there is such a way in legal existence, as is described in the indictment, viz. leading from Low street, near Tap-pan’s lane, to Turkey hill. It is described as a private way . for the use of the inhabitants of the town of Newbury. If there is any way at all there, it is rather a public than a private way, and should have been described as such. But no way is proved by record, nor is there any proof that the way has existed, or been used, as it now is, for any term of time which will establish it on the presumption of an ancient laying out or grant by the proprietors of the land. Paths across the pasture have undoubtedly been used for fifty or sixty years, probably much longer, but no fixed and determinate way is proved ; the witnesses on the part of the government testifying that, less than thirty years ago, the entrance from Low street has been changed by the proprietors of the land adjoining. There is nothing in the case from which it can be inferred that a town way was ever established here, except that it was sometimes called the town way in ancient times ; but by the records referred to it is called a highway, which, in common language, as well as in statutes, means a public way leading' from town to town or place to place, in contradistinction to private ways for the use of the *61 inhabitants of a particular town. Nor does the fact that it has been from time to time put under the care of the surveyors of Newbury and repaired at the expense of the town, prove it to be such a way as is described, for the same duty would have fallen upon the town had it been a public highway. Neither has the use of this way been limited to the inhabitants of Newbury, for the inhabitants of other towns used it as they had r-' ed ; so that all inference from the actual use of it will toid to the establishment of it as a public, rather than as a private way. Indeed it is difficult to conceive how a town way, merely as such, can be established in any other manner than by laying out for that particular use by the selectmen of the town, by virtue of the statute respecting highways, (1786, c. 67,) unless it should appear that some particular way had been immemorially used by the inhabitants of the town exclusively ; a circumstance which can rarely occur. It seems to be intended by the legislature, that no such ways shall acquire the character of private town ways, except in the form therein provided, and especially by the express allowance of the inhabitants in regular meeting assembled.[1] And we do not see how the principle of dedication to the public can be applied to a private way ; for the very evidence which would tend to show a dedication, would disprove it as a private way.[2] Besides, in this case a dedication is negatived by the fact, that gates were established and kept up by the proprietors of the land ; which is a sufficient indication, that although they were willing people should pass over their pasture, they did not mean to give the land over which the way passed, or surrender their right of discontinuing the use. The English doctrine of dedication is very well settled- There must be a manifest intention to accommodate the public through a man’s land, before he shall be held by implication to have given it; so that even when at the first opening of such way a post only had *62 been put up, which had been soon knocked down and remained down twelve years, and the passage had been uninterrupted all that time, it was determined that the owner might maintain trespass against those who used it as a way, and for that purpose pulled down a gate recently erected. 1 Campb. 262, note.[1]
We are satisfied that there is no such way as is described in the indictment, and therefore that the defendants must be discharged. If the passage is wanted for the public, or by the inhabitants of Newbury as a private way, the respective authorities who have charge of the subject of ways will doubtless do what duty requires of them in this regard.

 Rex v. Weonards, 6 Car. & Payne, 582. But if the termini are stated they must be proved, ibid.

 Commonwealth v. Low. 3 Pick. 408. See also Todd v. Rome, 2 Greenl. 55, Estes v. Troy, 5 Greenl. 368; Rowell v. Montville, 4 Greenl. 470; Commonwealth v. Charlestown, 1 Pick. 188; Ward v. Folly, 2 Southard, 482; Galatian v. Gardner, 7 Johns. R. 106.

 Commonwealth v. Lote, 3 Pick. 408.

 See Wood v. Veal, 5 Barn. & Ald. 454; Jarvis v. Dean, 3 Bingh. 447